Except as stated, I agree with the majority and also would affirm the judgment.

STATE OF CONNECTICUT *v.* GERMAN HERNANDEZ
(AC 25451)

Schaller, Flynn and Gruendel, Js.

Argued April 1—officially released August 30, 2005

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, German Hernandez, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a.[1] On appeal, the defendant contends that he is entitled to a new trial because the trial court improperly (1) excluded evidence that was relevant to his defense that he lacked the requisite intent to commit murder,[2] (2) charged the jury on consciousness of guilt and (3) charged the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Monseratte Bonilla, had been romantically involved, but the victim began to date another man. On the evening of April 24, 2000, two of the victim's neighbors saw her and the defendant enter her apartment. Neither neighbor saw the defen-

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] As permitted by law; see *State v. Shabazz*, 246 Conn. 746, 764, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999); the defendant also raised at trial a defense inconsistent with his defense that he lacked the requisite intent to commit murder. He argued that several intruders murdered the victim.

dant or the victim again that evening. Sometime between 4 a.m. and 5 a.m. the following day, April 25, 2000, the defendant telephoned his brother and told him that he was going to kill the victim. Soon thereafter, the defendant, using a knife, stabbed the victim in her apartment, inflicting life threatening wounds. At or around 5:30 a.m., one of the aforementioned neighbors, who lived in an apartment adjacent to the victim's apartment, heard faint moaning from the victim's bedroom and a voice stating: "Oh, my God."[3] At approximately 6 a.m., the defendant arrived at his brother's house, which, according to the defendant's brother, was approximately a one hour drive from the victim's apartment. The defendant, who was shaking and crying, stated that he wanted to say "goodbye" to his brother, his brother's wife and their baby. He hugged his brother, something he did not normally do, refused to answer his brother's question about whether something had happened and then left after being there for only five to ten minutes. Shortly thereafter, the defendant's brother telephoned the police because he was concerned.

At approximately 7:30 a.m., Wallingford police officers, responding to the brother's call, arrived at the victim's apartment. They heard crying and moaning inside and broke into the locked apartment. They found the defendant at the top of a staircase within the apartment. He was lying on his side, incoherent and semiconscious, with a knife protruding from his abdomen. They also found the victim lying on a bed in an upstairs bedroom; her throat had been stabbed twice, and she was dead.[4] Soon thereafter, the defendant, accompa-

---

[3] At oral argument before this court, counsel for the defendant stated that it was a fair inference that the victim had been injured by 5:30 a.m.

[4] Harold Wayne Carver II, the chief state's medical examiner, testified that both stab wounds to the victim's throat were life threatening. He also testified that the victim had two stab wounds near the edge of her rib cage, one of which caused injury to her diaphragm, one stab wound to her back, ten superficial stab wounds over her chest and belly, and several defensive wounds on her arms and hands.

nied by an officer, was taken to a hospital in an ambulance. After he was admitted to the hospital, tests performed on the defendant's blood revealed "the presence of alcohol" and that at or around 8:46 a.m. his "alcohol level was measured to be 260."[5]

I

The defendant first claims that the court improperly excluded evidence that was relevant to his defense that he lacked the specific intent to commit murder in violation of § 53a-54a, thereby violating his due process right to present a defense under the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. Noting that General Statutes § 53a-7 permits a defendant to offer evidence of intoxication that is relevant to negating the intent element of the crime of murder,[6] he essentially argues that the due process right to present a defense under both the federal and state constitutions includes the right to present the kind of evidence contemplated by § 53a-7. He argues that the proffered evidence in this case, a portion of a hospital record indicating that alcohol was present in his blood and that his "alcohol level was . . . 260" at approximately 8:46 a.m. on the day of the murder,[7] was that kind of evidence and that the court improperly deemed it as not relevant and improperly excluded it on that basis,

[5] At oral argument before this court, the state conceded that the defendant did not consume any alcohol from the time at which the police discovered him, approximately 7:30 a.m., to the time at which hospital staff drew his blood, approximately 8:46 a.m.

[6] General Statutes § 53a-7 provides in relevant part: "[I]n any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . ."

[7] Specifically, the contested portion of the hospital record states: "Tox screen was only significant for the presence of alcohol. On admission alcohol level was measured to be 260. The patient was placed on DT prophylaxis, receiving Ativan 1 mg. q6h."

thereby violating his purported constitutional right to present such evidence. We disagree that the court improperly deemed the proffered evidence irrelevant and excluded it on that basis.

Even when the improper exclusion of defense evidence amounts to a denial of the right to present a defense; see *State* v. *Bova*, 240 Conn. 210, 236, 690 A.2d 1370 (1997); thereby placing on the state the burden of proving the exclusion to have been harmless beyond a reasonable doubt; *State* v. *Cavell*, 235 Conn. 711, 720, 670 A.2d 261 (1996); a defendant, when claiming that a court's ruling on relevance and admissibility was improper, bears the initial burden of demonstrating that that ruling was an abuse of discretion. See *State* v. *Ramos*, 261 Conn. 156, 175, 801 A.2d 788 (2002). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Pool* v. *Bell*, 209 Conn. 536, 541, 551 A.2d 1254 (1989). In making that determination, this court will make every reasonable presumption in favor of the trial court's ruling. *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997). With that standard in mind, we conclude that the court did not abuse its discretion in finding the proffered evidence irrelevant and excluding it on that basis, and, therefore, the defendant's constitutional right to present a defense was not violated. See *State* v. *Cerreta*, 260 Conn. 251, 261, 796 A.2d 1176 (2002).

Our Supreme Court has stated that courts are not required to admit evidence that is merely speculative. *State* v. *Stepney*, 191 Conn. 233, 246, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). "[R]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection

between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Ramos,* supra, 261 Conn. 177–78.

The defendant sought to introduce, as evidence that he lacked the requisite intent to commit murder at the time of the murder, a portion of a medical record indicating that alcohol was present in his blood and that his "alcohol level was . . . 260" at approximately 8:46 a.m. on the day of the murder.[8] The defendant attempted to introduce only the disputed portion of the medical report as evidence of his intoxication at the time of the murder earlier that day and did not provide the jury with any other evidence that he drank prior to the murder or any evidence as to what "260" meant. The court excluded the proffered portion of the medical record, finding that it was not relevant, that alone "it [did] not . . . translate into any meaningful information as to the time or amount of consumption" of alcohol, that it lacked any probative value and that "[t]here [was] no sufficient open and visible connection to a claim of intoxication at the time of [the murder] to render this evidence relevant." Under all the circumstances, particularly the lack of an explanation of what "260" at approximately 8:46 a.m. meant, in terms of both the defendant's state of being at 8:46 a.m. and his state of being at the time of the murder, and the lack of any other evidence that the defendant drank prior to the time of the murder, we conclude that the court did not abuse its discretion in finding there to have

[8] The state objected only to allowing the introduction of the contested portion of the medical record. It objected on the ground that there was no evidence of when and where the alcohol was consumed and, therefore, that it would lead to speculation as to whether the defendant's intent was affected at the time of the murder. The state did not object to the introduction of a redacted version of the medical record, which was entered into evidence as defendant's exhibit G.

been "no sufficient open and visible connection to a claim of intoxication at the time of [the murder] to render [the proffered] evidence relevant."

Under the circumstances, the court reasonably could have concluded that the foundation laid for admission of the proffered evidence was insufficient to support the inference suggested by the defendant, which was that he was intoxicated at the time of the murder to such a degree that he lacked the requisite intent to commit murder. See *State* v. *Stepney*, supra, 191 Conn. 246; *State* v. *Morales*, 71 Conn. App. 790, 816, 804 A.2d 902 (although evidence was admitted, instruction on intoxication not warranted because evidence yielded no reasonable inference as to when defendant consumed alcohol vis-a-vis time murder occurred and provided no basis, other than pure speculation, for jury to infer defendant was intoxicated at time of murder to point of incapacity to form specific intent to murder victim), cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). In other words, the court reasonably could have concluded that the proffered evidence was too speculative and did not have a logical tendency to aid the jury in determining if the defendant was intoxicated at the time of the murder to a degree that he lacked the requisite intent to commit murder. Accordingly, we conclude that the court did not abuse its discretion in holding that "[t]here [was] no sufficient open and visible connection to a claim of intoxication at the time of [the murder] to render [the proffered] evidence relevant." The defendant's first claim therefore fails.

II

The defendant next claims that he is entitled to a new trial because the court improperly charged the jury on consciousness of guilt. Specifically, the defendant argues that by instructing the jury that certain "statements when shown to be false *are* circumstantial evi-

dence of guilty consciousness"; (emphasis added); the court improperly placed its imprimatur on the state's version of the events and improperly implied to the jury that it should favor an inference of guilt. The defendant's claim is without merit.[9]

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial. . . .

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as

---

[9] The state argues that the defendant failed to preserve his claim. We disagree. Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of . . . an instruction unless the matter is covered by a written request to charge . . . ." The defendant made such a written request to charge and, therefore, preserved his claim for appellate review. Specifically, the defendant requested that the court instruct the jury on consciousness of guilt as follows: "Evidence has been admitted in this case from which the state asserts that [the defendant] gave false statements to the police, regarding how many people came into the house, whether he made any phone calls, and whether he left the 39B Wharton Brook Drive at any point. In this context, you must determine first, did he falsely give the police statements concerning these topics. In consideration of this issue, you should consider where the statements were given, and the circumstances surrounding the statements. Whether or not he falsely gave statements to the police is for you to decide as the trier of fact. If, and only if, you conclude that the defendant did give false statements to the police, you must then decide if this is in any way related to the offenses charged. If you find that it is so related, it is for you to determine what, if any, weight [it] should be given."

accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *State* v. *Solek*, 66 Conn. App. 72, 87–88, 783 A.2d 1123, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

The defendant essentially argues that the court should have stated that false statements are circumstantial evidence from which the jury *may*, but is not required to, infer guilty consciousness and that by using the words "*are* circumstantial evidence of guilty consciousness"; (emphasis added); the court improperly implied that it favored an inference of guilt. Although we agree with the defendant that the court improperly instructed the jury that false statements "are" circumstantial evidence of guilty consciousness, we conclude that the instructions as a whole did not mislead the jury.

Immediately after instructing the jury that false statements "are circumstantial evidence of guilty consciousness," the court instructed the jury: "[*I*]*f you choose, you may use* [false statements by the defendant] as independent evidence of his guilt of the crime charged. First, you must determine whether the state has proven any of such statements and, as to any proven statement, that it was false. If so, and if you then find proven that the defendant did so in connection with these crimes, this does not raise a presumption of guilt; it is circumstantial evidence, and *you may or may not infer* consciousness of guilt from it." (Emphasis added.) Accordingly, we reject the defendant's second claim.[10]

[10] In his appellate brief, in part of his written request to charge and in an objection at trial following the court's instruction to the jury, the defendant

## III

Finally, the defendant claims that the court improperly charged the jury on reasonable doubt. Specifically, he argues that the court unconstitutionally diluted the state's burden of proof by instructing the jury that reasonable doubt is: (1) "a real doubt, an honest doubt . . . doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence"; (2) "such a doubt as in serious affairs that concern you [that] you would heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance"; and (3) "not a surmise, a guess or a mere conjecture," nor a "doubt not warranted by the evidence or by the lack of evidence."

We find that claim to be without merit. Our Supreme Court already has held that a trial court may use that language to explain reasonable doubt. See, e.g., *State* v. *Ferguson*, 260 Conn. 339, 371, 796 A.2d 1118 (2002) ("[w]e consistently have held that the definition of reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence . . . and as a doubt which in the serious affairs which concern you in every day life you would pay heed and attention to does not dilute the state's burden of proof when such definitions are viewed in the context of an entire charge" [internal quotation marks omitted]); *State* v. *Griffin*, 253 Conn. 195, 206–

questions the propriety of consciousness of guilt instructions in general. He now asks this court on appeal to use its "supervisory authority to bar consciousness of guilt instructions." Our Supreme Court has already stated on numerous occasions that consciousness of guilt instructions are permissible. See, e.g., *State* v. *Hines*, 243 Conn. 796, 709 A.2d 522 (1998). "[T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Portee*, 55 Conn. App. 544, 569, 740 A.2d 868 (1999), cert. denied, 252 Conn. 920, 744 A.2d 439 (2000).

207, 749 A.2d 1192 (2000) (our Supreme Court has "approved a reasonable doubt instruction containing the statement that such a doubt is not 'a surmise, a guess or a conjecture'"; noting that United States Supreme Court has upheld explanation that reasonable doubt is doubt "that would cause a reasonably prudent person to 'hesitate' to act in matters of importance"); *State* v. *Derrico*, 181 Conn. 151, 171 n.4, 434 A.2d 356 (finding no error in instruction to jury that reasonable doubt "is not a surmise or a guess or a conjecture" [internal quotation marks omitted]), cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). "[T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Portee*, 55 Conn. App. 544, 569, 740 A.2d 868 (1999), cert. denied, 252 Conn. 920, 744 A.2d 439 (2000).

The judgment is affirmed.

In this opinion the other judges concurred.