******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* LORENZO ADAMS
(SC 19690)
(SC 19692)

Rogers, C. J., and Palmer, McDonald, Robinson and D'Auria, Js.

*Syllabus*

Convicted of the crimes of attempted larceny in the sixth degree and breach
of the peace in the second degree in connection with an incident in
which the defendant attempted to shoplift a bag of items from a store
before leaving that bag behind and fleeing, the defendant appealed to
the Appellate Court, which reversed his conviction as to attempted
larceny because there was no evidence that the items in the bag had
belonged to the store. The Appellate Court reasoned that the store
surveillance video had not captured the defendant's placing of specific,
identifiable store merchandise into the bag, and, although one of the
investigating police officers testified that the store's employees had
determined the total dollar amount of the items in the bag, there was
no evidence to substantiate how those employees arrived at that exact
value. On the granting of certification, the state appealed to this court.
*Held* that the Appellate Court incorrectly concluded that the evidence
was insufficient to support the defendant's conviction of attempted
larceny, the evidence having supported a reasonable inference that the
items in the bag belonged to the store and that the defendant intended
to deprive the store of those items permanently without its consent:
the fact finder could have reasonably inferred, from the evidence that
the employees determined the exact value of the items in the bag, that
those items had price tags on them from the store, which, together with
the surveillance video showing the defendant's furtive movements, his
resistance when store employees had attempted to stop him, his aban-
donment of the bag, and his flight from the store, raised a reasonable
inference that the bag contained items owned by the store; furthermore,
the defendant's claim that the evidence of his flight could not be used to
establish that a crime was committed was unavailing because, although
evidence of flight, standing alone, may be ambiguous, it was for the
fact finder to resolve that ambiguity under all of the relevant facts
and circumstances.

Argued October 16—officially released December 19, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of robbery in the third degree, attempt to commit larceny in the sixth degree and breach of the peace in the second degree, brought to the Superior Court in the judicial district of Danbury, geographical area number three, and tried to the court, *Roraback, J.*; judgment of guilty of attempt to commit larceny in the sixth degree and breach of the peace in the second degree, from which the defendant appealed to the Appellate Court, *Beach, Sheldon* and *Harper, Js.*, which reversed in part the judgment of the trial court, and the defendant and the state, on the granting of certification, filed separate appeals with this court. *Reversed in part; judgment directed; appeal dismissed.*

*Deren Manasevit*, assigned counsel, for the appellant-appellee (defendant).

*Nancy L. Walker*, deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Colleen P. Zingaro*, assistant

state's attorney, for the appellee-appellant (state).

*Opinion*

ROGERS, C. J. The issues that we must resolve in these certified appeals by the defendant, Lorenzo Adams, and the state are whether the Appellate Court correctly concluded that (1) the defendant's conviction of breach of the peace in the second degree in violation of General Statutes § 53a-181 was supported by the evidence, and (2) the defendant's conviction of attempted larceny in the sixth degree in violation of General Statutes § 53a-49 and General Statutes (Rev. to 2005) § 53a-125b[1] was not supported by the evidence. The defendant was charged with a variety of offenses after he attempted to steal merchandise from a Marshalls department store in Danbury and engaged in a scuffle with the store's security personnel. After a trial to the court, the defendant was found guilty of breach of the peace in the second degree and attempted larceny in the sixth degree, and the court rendered judgment accordingly. The defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the conviction of breach of the peace and, in a split decision, reversed the conviction of attempted larceny. See *State* v. *Adams*, 163 Conn. App. 810, 825, 137 A.3d 108 (2016). We then granted the defendant's petition for certification to appeal to this court on the following issue: "Did the Appellate Court correctly determine that there was sufficient evidence to support the defendant's conviction for breach of the peace?" *State* v. *Adams*, 321 Conn. 913, 136 A.3d 1273 (2016). We also granted the state's petition for certification to appeal on the following issue: "Did the Appellate Court majority correctly determine that there was insufficient evidence to support a judgment against the defendant of attempted larceny in the sixth degree?" *State* v. *Adams*, 321 Conn. 912, 138 A.3d 281 (2016). We dismiss the defendant's appeal on the ground that certification was improvidently granted, and we reverse in part the Appellate Court's judgment with respect to its determination that there was insufficient evidence to support the conviction of attempted larceny in the sixth degree.

The record reveals the following facts that the trial court reasonably could have found and procedural history. On September 23, 2006, the defendant went to the men's department of the Marshalls department store in Danbury. The defendant's activities after he entered the men's department were recorded on an eighteen minute surveillance video.[2] Approximately thirty seconds into the video recording, the defendant removed an item, which appeared to be either a jacket or a suit, from a clothing rack. The defendant then carried the item to a corner of the store where his entire body, except for the top of his head, was hidden by a merchandise display. When he left the corner several seconds later, he was not carrying anything. Approximately six minutes later, the video recording showed the defendant car-

rying a pair of shoes in his right hand and another item in his left hand. Several minutes later, the defendant returned to the same corner of the store where, over the course of about three minutes, he repeatedly glanced around furtively, ducked and looked down as if doing something with his hands. The defendant eventually emerged from the right end of the merchandise display carrying a plastic bag in his left hand, which appeared to be either empty or only partially filled, and other items in his right hand. He then can be seen placing items in the bag, at which point he returned to the hidden area behind the merchandise display. Several seconds later, the defendant emerged from the left end of the merchandise display without the bag and continued to browse around the store and to pick up merchandise. After approximately two minutes, he returned to the same corner. Several seconds later, he again emerged from the right end of the merchandise display and again appeared to be placing items in a bag. The defendant can then be seen walking to the front of the store with a heavily loaded plastic bag. Without going through any checkout line, he headed toward the exit. At that point, a man and a woman, identified at trial as Marshalls' loss prevention officers Joseph Fernandes and Christine Nates, approached the defendant from inside the store. Fernandes and Nates wore similar dark colored smocks over their clothes. There was a brief scuffle between the defendant and the officers, during which Nates grabbed the bag from the defendant. The defendant then ran out of the store.

Shortly thereafter, Sergeant Vincent LaJoie and Officer Jose Pastrana of the Danbury Police Department responded to a report of a larceny in progress at Marshalls. LaJoie arrived first and obtained a description of the defendant from Fernandes and Nates. Pastrana arrived shortly thereafter and accompanied Fernandes and Nates to the store's loss prevention office where he viewed the video recording of the defendant in the store. Meanwhile, LaJoie searched for the suspect in the parking lot of the shopping plaza. Upon seeing the defendant, LaJoie notified the police dispatcher that he had located the suspect, and then LaJoie approached him. Shortly thereafter, Pastrana, Fernandes and Nates arrived at the scene, and the loss prevention officers identified the defendant as the person who had attempted to steal items from the store. The defendant was arrested and ultimately charged with, among other crimes, attempted larceny in the sixth degree and breach of the peace in the second degree. Specifically, the long form information alleged that the defendant committed attempted larceny in the sixth degree when he "attempted to take a jacket from the [Marshalls] store . . . ."

Fernandes and Nates were unavailable to testify at trial.[3] Pastrana testified without objection, however, that he had been informed, presumably by Fernandes

and Nates, that the value of the merchandise that was in the bag that the defendant had attempted to carry out of the store was approximately $979. Specifically, when asked whether he knew what merchandise the defendant was trying to take, Pastrana responded that he did not know what specific items were in the bag, but "the total amount that they gave me—they ran up . . . was approximately $979 and change."

The trial court found the defendant guilty of attempted larceny in the sixth degree and breach of the peace in the second degree. The defendant appealed from the judgment of conviction to the Appellate Court, which concluded that the evidence was sufficient to support the conviction of breach of the peace in the second degree; *State* v. *Adams*, supra, 163 Conn. App. 825; but not to support the conviction of attempted larceny in the sixth degree. Id., 822. With respect to the breach of the peace conviction, the Appellate Court determined that the conviction was supported by the video recording showing the defendant trying to force his way past Fernandes and Nates when they confronted him at the exit and by Pastrana's testimony that Fernandes and Nates told him that the defendant shoved them. Id., 824. The court concluded that "[t]he cumulative force of this evidence is that the defendant used physical force, namely, a shove, with the intent to impede a lawful activity." Id., 824–25; see also *State* v. *Wolff*, 237 Conn. 633, 670, 678 A.2d 1369 (1996) ("[t]he predominant intent [required for a breach of the peace conviction] is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity" [internal quotation marks omitted]).

With respect to the conviction of attempted larceny in the sixth degree, a majority of the Appellate Court concluded that "there is no evidence that the items that the defendant tried to exit Marshalls with belonged to the store. The surveillance footage does not capture the defendant's placing of specific, identifiable store merchandise into the bag before making off with it, and there was no evidence before the trial court that the contents of the bag that the defendant abandoned belonged to Marshalls. It is entirely conceivable that the defendant entered Marshalls with the bag, and that the bag contained items from somewhere else. To the extent that the state argues that evidence of value may, by itself, establish that the items belonged to Marshalls, we reject that position as well. For all we know, Fernandes and Nates guessed the value that they reported to Pastrana. We have no evidence to substantiate how they concluded that the items valued $979. In the absence of some evidence, we conclude that the court could not infer ownership from value without speculating." *State* v. *Adams*, supra, 163 Conn. App. 821–22. Accordingly, the majority concluded, the state had failed to prove an essential element of §53a-125b.

Judge Beach dissented from the judgment reversing the defendant's conviction of attempted larceny in the sixth degree. He contended that the video recording and Pastrana's testimony regarding the value of the merchandise in the bag gave rise to a reasonable inference that "the defendant was engaged in the process of collecting items from the store and placing them in the bag" and that innocent explanations for the defendant's behavior were implausible. Id., 826.

These certified appeals followed. The defendant claims that the Appellate Court incorrectly concluded that the evidence supported his conviction of breach of the peace in the second degree because no reasonable person could find that he had the intent to impede a lawful activity when he scuffled with Fernandes and Nates. After examining the record on appeal and considering the briefs and the arguments of the parties, we have concluded that the defendant's appeal should be dismissed on the ground that certification was improvidently granted. The issue that the defendant raises was fully considered in the opinion of the Appellate Court, and it would serve no useful purpose to repeat that discussion here. See, e.g., *State* v. *Dyous*, 320 Conn. 176, 177, 128 A.3d 505 (2016).

We agree, however, with the state's claim that the Appellate Court incorrectly concluded that the evidence was insufficient to support the defendant's conviction of attempted larceny in the sixth degree. We begin with the standard of review. "In [a defendant's] challenge to the sufficiency of the evidence . . . [w]hether we review the findings of a trial court or the verdict of a jury, our underlying task is the same. . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Drupals*, 306 Conn. 149, 157–58, 49 A.3d 962 (2012). "[W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) Id., 158.

"We have repeatedly acknowledged that it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 713–14, 138 A.3d 868 (2016). "On appeal, we do not ask whether there is a

reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 152, 976 A.2d 678 (2009).

General Statutes (Rev. to 2005) § 53a-125b (a) provides: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less." General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." Thus, the essential elements of larceny are: "(1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Smith*, 148 Conn. App. 684, 699, 86 A.3d 498 (2014), aff'd, 317 Conn. 338, 118 A.3d 49 (2015). General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

We conclude in the present case that the evidence supports the defendant's conviction of attempted larceny in the sixth degree. The video recording showed the defendant carrying a suit or jacket to a corner of the store, where he was hidden by a merchandise display, and leaving the corner without the items. It also showed the defendant carrying other merchandise around the store and returning repeatedly to the same corner, where he glanced furtively around and engaged in activity that did not appear to be normal shopping behavior. At one point, the defendant emerged from the right end of the merchandise display carrying an empty or nearly empty plastic bag in one hand and items in the other. He then put some items in the bag, returned to the hidden portion of the corner and emerged at the left end of the merchandise display without the bag. At the end of the video recording, the defendant emerged from behind the merchandise display with a heavily loaded plastic bag and then headed toward the exit without first going through the checkout lanes. When Fernandes and Nates confronted the defendant as he tried to leave, he did not demand an explanation from them or seek assistance from oth-

ers, as it would have been natural for him to do if he had been attempting to leave the store with his own property. Rather, he abandoned the bag full of items and ran away. Marshalls employees later told Pastrana that they "ran up" the value of the merchandise in the bag as "$979 and change."

We conclude that this evidence overwhelmingly supports a reasonable inference that the items in the bag belonged to Marshalls and that the defendant intended to deprive Marshalls of the property permanently without its consent. Indeed, we agree with Judge Beach that it is simply implausible that the defendant would have entered the Marshalls store with a bag full of his own belongings, hidden the bag in the corner behind the merchandise display, carried Marshalls merchandise to that area, taken his belongings out of the bag and then put them back in, and then abandoned the bag when confronted by Fernandes and Nates. We also disagree with the Appellate Court's conclusion that Pastrana's testimony regarding the value of the items in the bag did not imply that Marshalls owned them because it was possible that Fernandes and Nates had simply guessed the value. It was perfectly reasonable for the trial court to infer, from the very specific dollar amount that Pastrana gave, that Fernandes and Nates "ran up" the items on a cash register or calculator and, therefore, that the items must have had price tags on them from Marshalls. It simply defies common sense to conclude that they might have guessed a value of "$979 and change."

The defendant contends that, to the contrary, the state failed to prove the elements of attempted larceny because it did not present any evidence that would have allowed the trial court to ascertain the precise identity of the goods, and, without such evidence, ownership cannot be established. The defendant cites no authority, however, for the proposition that evidence sufficient to establish beyond a reasonable doubt that the goods at issue were owned by the alleged victim of the theft, but not the specific nature of those goods, is insufficient as a matter of law to establish ownership for purposes of an attempted larceny charge. Rather, in each case cited by the defendant in which the evidence was found to be insufficient to establish a theft, the specific identity of the goods alleged to have been stolen was established, but the state failed to prove either ownership or a wrongful taking. See *People* v. *Cowan*, 49 Ill. App. 3d 367, 368–69, 364 N.E.2d 362 (1977) (when defendant was accused of stealing shirt from warehouse where he worked, evidence that defendant, while in warehouse, was in possession of shirt of type that warehouse stored was insufficient to establish ownership when evidence also showed that other retailers sold similar shirts and defendant testified that he bought shirt from peddler); *Stewart* v. *State*, 258 Ind. 107, 111, 279 N.E.2d 202 (1972) (when defendant was charged with having

control over property stolen by another, evidence that skates belonging to skating rink were found in defendant's car was not sufficient to establish that skates had been stolen); *Maughs* v. *Charlottesville*, 181 Va. 117, 119–21, 23 S.E.2d 784 (1943) (when evidence showed that police observed defendant make several trips between his automobile and location where railway company had stored "tie plates," and search of defendant's car revealed twenty-one tie plates, evidence was insufficient to establish that tie plates belonged to railway company because company employees could not swear that tie plates were missing from place where they were stored).

The defendant's reliance on the principle that the state must present evidence of the corpus delicti is also misplaced. See *State* v. *Harris*, 215 Conn. 189, 192, 575 A.2d 223 (1990) ("the corroborative evidence of the corpus delicti should be presented, and the court satisfied of its material character and adequacy"). *Harris* merely stands for the principle that "a *naked* extrajudicial confession of guilt by one accused of [a] crime is not sufficient to sustain a conviction when unsupported by *any* corroborative evidence." (Emphasis in original; internal quotation marks omitted.) Id.; see also *State* v. *Beverly*, 224 Conn. 372, 375, 618 A.2d 1335 (1993) ("[t]he corpus delicti rule is a rule of evidence intended to protect an accused from conviction as a result of a baseless confession when no crime has in fact been committed"). *Harris* does not support the proposition that circumstantial evidence is insufficient to establish that a crime was committed as a matter of law. Indeed, that opinion expressly held to the contrary. See *State* v. *Harris*, supra, 193 ("corroborating evidence [that a crime was committed] may be circumstantial in nature").

The defendant further contends that evidence of flight from the scene of a crime is probative only on the issues of identity or intent, and it cannot be used to establish that a crime was committed in the first instance. In support of this claim, the defendant cites a number of cases in which evidence of flight was used to establish identity or intent. See *State* v. *Cerilli*, 222 Conn. 556, 569, 610 A.2d 1130 (1992); *State* v. *White*, 127 Conn. App. 846, 854, 17 A.3d 72, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011); *Robinson* v. *Commissioner of Correction*, 73 Conn. App. 579, 581, 808 A.2d 1159 (2002), cert. denied, 262 Conn. 944, 815 A.2d 676 (2003); *State* v. *Reddick*, 33 Conn. App. 311, 329–30, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994). None of these cases, however, expressly held that such evidence may be not be used for any other purpose.

The general rule is that, in the absence of a limiting instruction, the finder of fact is "entitled to draw any inferences from the evidence that it reasonably would

support." *Curran* v. *Kroll*, 303 Conn. 845, 864, 37 A.3d 700 (2012). Although we recognize that, standing alone, evidence of flight may be ambiguous, any such ambiguities are for the finder of fact to resolve under all of the relevant facts and circumstances. *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986) ("[t]he fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." [Citation omitted; internal quotation marks omitted.]). In any event, as Judge Beach noted in his dissenting opinion; see *State* v. *Adams*, supra, 163 Conn. App. 826–27; it is difficult in the present case to imagine an innocent explanation for the defendant's conduct when he immediately resisted the attempt by Fernandes and Nates to stop him as he left the store, abandoned $979 worth of merchandise and ran away. Unlike the situation where a violent crime has been committed and innocent bystanders might understandably want to leave the area, there was nothing inherently threatening or frightening about the appearance or behavior of Fernandes and Nates, who wore similar smocks and approached the defendant in a nonaggressive manner from inside the store. Moreover, if the defendant believed for some reason that they were about to mug or assault him, despite the fact that the area was brightly lit and they were surrounded by numerous shoppers and store personnel, the most natural response would have been for him to appeal to those people around him for help, or at least to seek help after he left the store. We can perceive *no* reason why he would have simply abandoned $979 worth of merchandise if it had belonged to him.

The defendant relies on *Maughs* v. *Charlottesville*, supra, 181 Va. 117, to support his claim that flight cannot be used to prove that a crime was committed.[4] To the extent that the court in *Maughs* believed that circumstantial evidence is insufficient as a matter of law to establish ownership for purposes of proving larceny, we find it unpersuasive. Although it is true that ownership is not established when there is insufficient circumstantial evidence *and* the alleged victim's "doubts [are] so great that he could neither swear that he had lost, nor that the property in question was his own"; *Goldman* v. *Commonwealth*, 100 Va. 865, 880, 42 S.E. 923 (1902); see also id., 879–80 (when alleged victim of theft declined to identify specific property in question as its property and there was evidence that property could have been owned by another entity, evidence was insufficient to establish ownership); that does not mean that, when circumstantial evidence *is* capable of raising the logical inference of ownership, such evidence is insufficient as a matter of law unless there is also testimony

by the owner identifying the specific property as his own. In any event, there was evidence in the present case that Fernandes and Nates had identified the items in the bag as belonging to Marshalls, namely, Pastrana's testimony that they "ran up" the value of the items as "$979 and change." We conclude that this evidence, together with the evidence showing the defendant's furtive and secretive conduct in the store, his resistance when Fernandes and Nates attempted to stop him, his abandonment of the bag and his flight from the store, cumulatively raised a reasonable inference that the bag contained items that were owned by Marshalls.

The judgment of the Appellate Court is reversed only with respect to the defendant's conviction of attempted larceny in the sixth degree and the case is remanded to that court with direction to affirm the judgment of the trial court, the judgment of the Appellate Court is affirmed in all other respects, and the defendant's appeal is dismissed.

In this opinion the other justices concurred.

[1] General Statutes (Rev. to 2005) § 53a-125b was amended by No. 09-138, § 6, of the 2009 Public Acts, which increased the maximum value of the property obtained from $250 to $500. In this opinion, all references to § 53a-125b are to the 2005 revision unless otherwise indicated.

[2] The video recording was not continuous but showed a series of still pictures at the rate of approximately one per second.

[3] We note that the trial took place in 2014, more than seven years after the incident at the Marshalls store.

[4] In *Maughs*, the defendant fled from the scene after he was observed by police officers making multiple trips between his automobile and an area where a railway company was storing railroad track "tie plates." *Maughs* v. *Charlottesville*, supra, 181 Va. 119–20. When the police caught up to the defendant, they found twenty-one tie plates in his automobile. Id., 120. Three of the railway company's employees testified that the tie plates in the defendant's possession were similar to the tie plates in the storage area. Id., 121. One of these employees testified that, although he could not testify conclusively that the tie plates belonged to the railway company, he " 'would think so' " based on the fact that they came from the storage area. Id. Another employee testified that the railway company had not had occasion to determine whether tie plates were missing from the storage area. Id. The Supreme Court of Appeals of Virginia concluded that this evidence was insufficient to establish that the railway company owned the tie plates. Id. ("[w]hen the alleged owner thinks he has lost the property, but will not swear he has . . . the ownership is not, by this evidence sufficiently proved" [internal quotation marks omitted]).