******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT *v.* DEREK R. SWEET
(AC 44427)

Alvord, Cradle and Suarez, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of larceny in the third degree and
identify theft in the third degree, and, under a part B information, on a
plea of guilty, of being a persistent serious felony offender, the defendant
appealed to this court. The defendant stole a wallet, belonging to his
father, M, and used the credit cards, a debit card and his father's driver's
license contained within to make several purchases from various stores,
totaling in excess of $2000. On appeal, the defendant claimed, inter
alia, that the evidence was insufficient to prove that the defendant had
appropriated in excess of $2000 from M to himself and that certain
documentary evidence was improperly admitted in violation of the defen-
dant's constitutional right to confrontation and the rule against hear-
say. *Held*:

1. The defendant could not prevail on his claim that, because the state
   presented evidence that M suffered only a loss of credit through the
   defendant's use of the stolen credit cards and that the state failed to
   prove that credit is money, the evidence was insufficient to prove that the
   defendant appropriated in excess of $2000 from M to himself: contrary
   to the defendant's assumption that the state's theory of the case at trial
   with respect to the use of the credit cards was that the defendant stole
   money, the state's theory of the case was that the defendant stole credit
   from M, and it was sufficient to present evidence of the transactions,
   the credit card statements posting the transactions and M's efforts to
   remove those transactions from his credit card statements, and the
   record clearly demonstrated that the defendant used M's credit cards
   to purchase items without authorization to do so, those items were
   charged to M, and M's credit card issuers billed him for those charges,
   and the defendant failed to provide other facts that the state could have
   produced to prove that unauthorized use of a credit card results in a
   taking of credit; moreover, although the credit card issuers eventually
   did not hold M responsible for the debt that the defendant incurred,
   the defendant's actions resulted in a reduction of M's available credit
   at the time of the unauthorized purchases; furthermore, although M's
   loss of credit was not permanent, it did not mean that his credit was
   not stolen.

2. The defendant could not prevail on his unpreserved claim that both a
   property report, created by the investigating police officer that detailed
   the fraudulent transactions made by the defendant, and M's statement to
   the police, constituted testimonial hearsay that was improperly admitted
   into evidence in violation of his sixth amendment right to confrontation,
   as the record clearly demonstrated that defense counsel waived any
   objection to the admission of the property report and M's statement.

3. The defendant could not prevail on his unpreserved claim that letters
   from two card issuers regarding the fraudulent charges, which were
   admitted into evidence as past recollections recorded under a provision
   (§ 8-3 (6)) of the Connecticut Code of Evidence, constituted testimonial
   hearsay that was admitted in violation of his sixth amendment right to
   confrontation, as any error in admitting these letters was harmless
   beyond a reasonable doubt; these letters were admitted to show that
   the fraudulent charges occurred and that M reported that he was not
   involved in those transactions, and, contrary to the defendant's claim
   that the other exhibits were all evidence of the same facts and, therefore,
   the letters were corroborative, the record demonstrated that the letters
   were cumulative.

4. The defendant could not prevail on his unpreserved claim that two state-
   ments from M's credit card issuers were improperly admitted as past
   recollections recorded under § 8-3 (6) of the Connecticut Code of Evi-
   dence, on the ground that the information contained therein was never
   personally known to M, through whom the statements were presented,
   as any such error did not substantially affect the verdict; the record

demonstrated that M's statement to the police established the dates and values of the fraudulent transactions and, therefore, the statements, admitted only to prove those values, were merely cumulative, the testimony of M and the investigating police officer regarding the charges established the amounts listed on the property report and in M's statement to the police, and, accordingly, the two statements were not needed to corroborate the information presented.

Argued April 12—officially released August 30, 2022

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of larceny in the third degree and identify theft in the third degree, and, in the second part, with being a persistent serious felony offender, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the first part of the information was tried to the jury before *Oliver, J.*; verdict of guilty; thereafter, the defendant was presented to the court, *Oliver, J.*, on a plea of guilty to the second part of the information; judgment of guilty in accordance with the verdict and plea, from which the defendant appealed to this court. *Affirmed.*

*Adele V. Patterson*, former senior assistant public defender, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, former state's attorney, and *David Clifton*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Derek R. Sweet, appeals from the judgment of conviction, rendered after a jury trial, of one count of larceny in the third degree in violation of General Statutes § 53a-124 (a) (2),[1] and one count of identity theft in the third degree in violation of General Statutes § 53a-129d (a).[2] On appeal, the defendant claims that (1) there was insufficient evidence to sustain the jury's verdict of guilty of larceny in the third degree and (2) the court erred in admitting certain hearsay evidence. We disagree and, accordingly, affirm the judgment of conviction.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. On or about November 19, 2017, the defendant took a wallet, belonging to his father, Martin Sweet (Martin), which contained a People's United Bank debit card, an American Express credit card, a Chase credit card, an Old Navy credit card, a Home Depot credit card,[3] a Social Security card, and a driver's license. On November 19, the defendant used the cards to make a variety of purchases at local stores, including Walmart, Stop and Shop, and Family Dollar. The purchases totaled $2373.94.[4] On or around December 28, 2017, the defendant made three purchases, totaling $2628.91, using Martin's Home Depot credit card in three separate transactions at a West Hartford Home Depot.[5] Martin reported the theft of the wallet and the subsequent fraudulent charges to the card issuers, and, after taking the several steps required to dispute the charges, he did not have to pay any of the fraudulent charges.

Following an investigation, the defendant was arrested and charged, by way of a substitute information, with one count of larceny in the third degree in violation of § 53a-124 (a) (2), and one count of identity theft in the third degree in violation of § 53a-129d (a). After one day of evidence, the state rested, and the defendant filed a motion for judgment of acquittal, which the court, *Oliver, J.*, denied.[6] On January 23, 2020, the jury found the defendant guilty on both counts. The defendant then pleaded guilty to a part B information, which charged him as a persistent serious felony offender in violation of General Statutes § 53a-40 (c).[7] Following the verdict, the defendant renewed his motion for judgment of acquittal, which was also denied. On August 17, 2020, the court sentenced the defendant to a total effective sentence of ten years of incarceration, execution suspended after forty-two months, followed by five years of probation. This appeal followed.

I

The defendant's first claim on appeal is that the evidence was insufficient to prove that he appropriated

in excess of $2000 from Martin to himself. Although the defendant admits that "the jury reasonably could find that the state proved its theory that the defendant stole his father's credit cards and used them to make unauthorized purchases," he contends that there was no "evidence or law to support its contention that using the [credit] cards took money from Martin." Specifically, the defendant asserts that "[t]he state's articulation of its theory of the crime to the trial court and to the jury assumed that the use of a person's credit card results in taking his money, but no evidence was offered to support that factual premise." In sum, the defendant's argument is that the state's theory of the case with respect to the credit cards was that the defendant stole *money* from Martin and, therefore, because the evidence made clear that Martin ultimately only suffered a loss of credit, the state further had to prove that credit is money. In response, the state argues that its theory of the case at trial with respect to the credit cards was that the defendant stole *credit* from Martin and, therefore, it was sufficient to present evidence of the transactions, the credit card statements posting the transactions, and Martin's efforts to remove those transactions from his credit card statements to establish that the defendant took credit worth more than $2000 from Martin. We agree with the state.[8]

The following procedural history is relevant to our resolution of this claim. In count one of the operative long form information, the state charged the defendant with larceny in the third degree in violation of § 53a-124 (a) (2), alleging as follows: "on or about diverse dates between November 19, 2017, and December 28, 2017, beginning in the town of Newington and continuing throughout the state, the defendant . . . with intent to deprive another of property and appropriate the same to himself and a third person, did wrongfully take, obtain, and withhold such property from its owner, the value of which exceeds two thousand dollars, to wit: the defendant did wrongfully appropriate in excess of $2000 from Martin Sweet to himself."

At trial, Martin testified that, once he realized his wallet was missing, he reported that issue to his credit card issuers. He further testified that, upon reporting the missing cards, he was informed that the cards were being used. Accordingly, he cancelled his credit cards and reported the situation to the Newington Police Department. He also testified about the credit card bills he received listing charges he did not make and the process through which he reported the fraudulent transactions to the card issuers. During Martin's testimony, the state introduced into evidence credit card statements that listed the various disputed charges and letters from the credit card issuers that detailed the reported fraudulent charges.[9]

Officer Reza Abbassi of the Newington Police Depart-

ment testified about his investigation into the matter. He testified that Martin filled out a lost/stolen property report (property report) listing all of the charges made to his credit cards[10] following the theft of his wallet, along with the times and locations of each transaction, and the property report was entered into evidence as a full exhibit.[11] Officer Abbassi testified that he used the property report to follow up with the stores to investigate who had made the various charges. Officer Abbassi also testified that, after viewing surveillance video, reviewing receipts, and meeting with Martin, he was able to confirm that the defendant had made the charges that Martin had reported as fraudulent.

In closing arguments, the prosecutor emphasized the timing of the larceny, asserting that there were "[nineteen] charges in just under [thirteen] hours. Over $2300 taken in that [thirteen] hours. . . . That tells you that the defendant is trying to rack up as much money as he can before those cards get cancelled. He wants to get the value while he can." The prosecutor then addressed the fact that Martin never had to pay for the defendant's charges: "Now the defense asked some questions about the bank covering [Martin's] loss. . . . That is legally irrelevant to your inquiry here.[12] What we do in criminal law is we punish conduct based upon the time that it occurs. We look at what the defendant did, not six months from now, not years from now to see who's left holding the bag; when he made those charges, it's Martin Sweet on the hook. Martin Sweet owes that money to the credit card [issuers]. When the defendant makes those charges, he doesn't know the credit card [issuers] are going to do the right thing and reimburse him. If they decided not to, Martin Sweet is the one with the debt. When he makes those charges, it's Martin Sweet, that's whose money he's taking." (Footnote added.) The prosecutor then referred to the credit card statements and argued that those charges represented the value of the credit taken from Martin.

In closing arguments, defense counsel stated, inter alia, that "[t]he state has to prove that there was property taken from [Martin] and with intent to deprive him of it. What is that property? When was [it] taken? Why was it deprived? So I'll ask you to consider those things when you go in to deliberate." In rebuttal, the prosecutor again emphasized the timing of the larceny, stating, "[a]gain, it's the time, the conduct at the time those cards are swiped. We don't look six months down the line to see who ends up holding the bag. The banks did the right thing here, that doesn't matter, Martin Sweet could have been out the money, and at that time, the defendant made those charges Martin Sweet was out that money."

We begin by setting forth the well established standard of review for claims of insufficient evidence.[13] "In reviewing the sufficiency of the evidence to support a

criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Edwards*, 202 Conn. App. 384, 389–90, 245 A.3d 866, cert. denied, 336 Conn. 920, 246 A.3d 3 (2021). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Tony O.*, 211 Conn. App. 496, 509, 272 A.3d 659, cert. denied, 343 Conn. 921, 275 A.3d 214 (2022).

The following legal principles guide our analysis. Section 53a-124 (a) (2) provides: "A person is guilty of larceny in the third degree when he commits larceny, as defined in [§] 53a-119, and . . . the value of the property or services exceeds two thousand dollars. . . ." General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-118 (a) (1) defines property as "any money, personal property, real property, thing in action, evidence of debt or contract, or article of value of any kind." "[T]he essential elements of larceny are: (1) the wrongful taking or carrying away of the . . . property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Adams*, 327 Conn. 297, 305–306, 173 A.3d 943 (2017).

The defendant argues that the state was required to prove that credit is money but failed to present evidence that credit is money; this argument is premised on an assumption that the state's theory of the case with respect to the use of the credit cards was that the defendant stole *money*. The state, however, correctly

points out that the theory it presented at trial was that the defendant stole *credit* when he used Martin's credit cards and that, therefore, there is no evidentiary missing link—it properly proved that the defendant stole credit.[14] After review of the substitute information,[15] the state's evidence, and the prosecutor's closing arguments, it is clear that, with respect to the defendant's use of Martin's credit cards, the state sought to prove that the defendant took property in the form of *credit* valued at more than $2000 from Martin on November 19 and December 28, 2017.[16] As the defendant aptly summarized in his principal appellate brief, "[t]he state's theory was that a taking from Martin occurred when his credit accounts were used to make unauthorized purchases from merchants totaling over $2000. The state expressly did not attempt to prove that the defendant's [use of Martin's credit cards] actually cost Martin any money." The state did not attempt to offer such proof because it presented evidence that the defendant took property in the form of *credit* when he made purchases with Martin's credit cards.[17] Therefore, the state did not need to show that credit is money, it needed only to present evidence that the defendant took property in the form of *credit*.[18]

Further, after considering the evidence in the light most favorable to sustaining the jury's verdict, we conclude that there was sufficient evidence presented for the jury to find that the defendant took credit totaling in excess of $2000 from Martin. The state presented evidence that established that the defendant took Martin's credit cards and used them without his consent. The state also presented evidence that the defendant's unauthorized purchases resulted in excess of $2000 being charged to Martin's credit accounts.

Responding to the state's position, the defendant argues that, "even if credit is property, the law does not deem every unauthorized use of a credit card to be a criminal taking without proof of that result . . . . It is not enough for a prosecutor to say that every use of a credit card imposes a financial obligation on the card owner: that is an assertion of fact essential to the state's case which it had to prove, with evidence, in order to convict in this case."

The defendant does not make clear, however, how the state failed to present proof of theft of credit. As discussed herein, the state presented evidence that the defendant used Martin's credit cards to purchase items without authorization to do so, that those items were charged to Martin, and that Martin's credit card issuers billed him for the defendant's charges. The defendant fails to provide other facts the state could have produced to prove that unauthorized use of a credit card results in a taking of credit. It is common knowledge that the holder of a credit card has a certain amount of credit, with which they may purchase goods and

services. As the credit card holder makes purchases with that credit, the amount of available credit is reduced. Common sense dictates that when another takes credit without authorization, the credit holder has less credit available and has therefore lost something of value. See *State* v. *Henderson*, 47 Conn. App. 542, 554, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998) ("[I]t is a reasonable and logical inference for a juror to conclude that a card referred to as a credit card enables one to receive things on credit. It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." (Footnote omitted; internal quotation marks omitted.)); see also *State* v. *Otto*, 305 Conn. 51, 70 n.17, 43 A.3d 629 (2012) ("[i]n deciding cases . . . [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion" (internal quotation marks omitted)).

The fact that the credit card issuers eventually did not hold him responsible for the debt that the defendant incurred does not alter the fact that the defendant's actions resulted in a reduction of Martin's available credit at the time of the unauthorized purchases. In fact, Martin testified that when he contacted the credit card issuers they informed him that several transactions had gone through and that, subsequently, he had to take several steps to ensure that he ultimately was not responsible for the defendant's charges. The fact that "everything was written off" does not mean that Martin's credit was not stolen, even though the loss was not permanent.

In light of the foregoing, we reject the defendant's claim that the evidence was insufficient to prove that the defendant took property valued in excess of $2000 from Martin.

II

The defendant next argues the court improperly admitted into evidence certain documents in violation of the defendant's constitutional right to confrontation and the rule against hearsay. We disagree.

A

We first address the defendant's claim that certain documents were admitted into evidence in violation of his sixth amendment right to confrontation. Those documents include the property report that Martin filled out and gave to Officer Abbassi, a letter from People's United Bank regarding the fraudulent charges on that card (People's letter), a letter from Chase Bank Card Services regarding the fraudulent charges on that card (Chase letter), and a statement that Martin gave to the police regarding the second round of charges at Home Depot in December, 2017 (statement).

The defendant concedes that this claim was not preserved and, consequently, requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Tyus*, 342 Conn. 784, 803, 272 A.3d 132 (2022). "[T]he inability to meet any one prong requires a determination that the defendant's claim must fail. . . . The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Soto*, 175 Conn. App. 739, 755, 168 A.3d 605, cert. denied, 327 Conn. 970, 173 A.3d 953 (2017).

On appeal, the state argues, inter alia, that (1) the defendant waived any sixth amendment claim concerning both the property report and the statement Martin gave to the police, and, therefore, with respect to these exhibits, the defendant's claim fails under the third prong of *Golding*, and (2) any error in admitting the People's letter and the Chase letter was harmless, and, therefore, with respect to these exhibits, the defendant's claim fails *Golding*'s fourth prong. We agree with the state.

1

We first address the property report and the statement that Martin gave to the police. The defendant argues that these two exhibits were admitted in violation of his sixth amendment right to confrontation because the two documents were "made under circumstances which would lead an objective witness reasonably to believe that the [documents] would be available for use at a later trial by available entities, which the defendant had no opportunity to confront." The state responds that the defendant's claim is waived with respect to these two exhibits because defense counsel affirmatively stated that there was "no objection" to either exhibit when each was offered as a full exhibit. We agree with the state and, therefore, conclude that the defendant's claim fails *Golding*'s third prong.

The following additional procedural history is relevant to our analysis of this claim. When the state offered the property report as a full exhibit, defense counsel conducted a brief voir dire of the witness through which the exhibit was offered. During the voir dire, the prosecutor objected to the line of questioning as going beyond the scope of voir dire, and the court stated in agreement that "[t]his is voir dire [of] the document as [opposed] to cross, counsel." Defense counsel then concluded questioning, stating: "Very good, Your Honor. No objection with that." Similarly, when the state offered Martin's statement as a full exhibit, defense counsel conducted a brief voir dire of the witness and informed the court that there was "no objection" to the exhibit.

"It is well settled that a criminal defendant may waive rights guaranteed to him under the constitution. . . . [T]he definition of a valid waiver of a constitutional right . . . [is] the intentional relinquishment or abandonment of a known right. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Additionally, it is well settled that defense counsel may waive a defendant's sixth amendment right to confrontation." (Citations omitted; internal quotation marks omitted.) *State* v. *Luna*, 208 Conn. App. 45, 68–69, 262 A.3d 942, cert. denied, 340 Conn. 917, 266 A.3d 146 (2021); see also *State* v. *Castro*, 200 Conn. App. 450, 457–58, 238 A.3d 813, cert. denied, 335 Conn. 983, 242 A.3d 105 (2020). We note also that "waiver of a fundamental right may not be presumed from a silent record." *State* v. *Smith*, 289 Conn. 598, 621, 960 A.2d 993 (2008).

"[A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . . To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court." (Internal quotation marks omitted.) *State* v. *Luna*, supra, 208 Conn. App. 70.

In *Luna*, defense counsel had no objection to marking a contested exhibit for identification and, when the state offered the exhibit in full, objected to the evidence only on the basis that it was more prejudicial than probative and specifically stated that there were no further objections to the exhibit. Id., 69. On appeal, the defendant claimed that the evidence was admitted in violation of his sixth amendment right to confrontation. Id., 67. Given the nature of defense counsel's statements, the court concluded that there had been "a valid, express waiver of the defendant's sixth amendment confrontation clause claim." (Internal quotation marks

omitted.) Id., 69–70. Therefore, the defendant's claim failed under the third prong of *Golding*. Id., 70.

Additionally, in *State* v. *Castro*, supra, 200 Conn. App. 462, this court determined that defense counsel expressly waived the defendant's right to confront the author of an exhibit because defense counsel indicated "that he had 'absolutely no objection' to the admission of the [exhibit], or to [a witness] testifying to the contents of [the exhibit]."

In the present case, it is clear from the record that defense counsel waived any objection to the admission of the property report and Martin's statement. The record indicates that defense counsel noted that he had "no objection" to both the property report and Martin's statement. These statements are similar to those made in *State* v. *Luna*, supra, 208 Conn. App. 69, and *State* v. *Castro*, supra, 200 Conn. App. 462, as defense counsel expressly stated, after voir dire, that he had no objection to the admission of the property report and statement as full exhibits. Therefore, defense counsel's statements "constituted a valid, express waiver of the defendant's sixth amendment confrontation clause claim."[19] See id. Consequently, with respect to the property report and Martin's statement to the police, *Golding*'s third prong is not satisfied.

2

We next address the defendant's claim that the People's letter and the Chase letter constituted testimonial hearsay that was admitted in violation of his sixth amendment right to confrontation. The defendant argues that "[t]he formality of these documents . . . reasonably would lead the declarants to believe that their statements would be used in a subsequent prosecution" and, therefore, their admittance violated his sixth amendment right to confrontation. The state argues, inter alia, that "any error in admitting [these exhibits] would be harmless beyond a reasonable doubt because they are cumulative to [the property report and Martin's statement to the police]." We agree with the state.

The defendant raises a claim under the sixth amendment and the record is adequate to review whether or not the admission of the evidence was harmful.[20] Accordingly, we turn to *Golding*'s fourth prong. On review, we conclude that the state has sustained its burden of demonstrating that any claimed error was harmless beyond a reasonable doubt. "[Our Supreme] Court has long recognized that a violation of the defendant's right to confront witnesses is subject to harmless error analysis . . . . In undertaking this analysis, the test for determining whether a constitutional [error] is harmless . . . is whether it appears beyond a reasonable doubt that the [error] complained of did not contribute to the verdict obtained. . . . In addition, [w]hen

an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . This court has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt. . . . [W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]. . . . Additional factors that we have considered in determining whether an error is harmless in a particular case include the importance of the challenged evidence to the prosecution's case, whether it is cumulative, the extent of cross-examination permitted, and the presence or absence of corroborating or contradicting evidence or testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Edwards*, 334 Conn. 688, 706–707, 224 A.3d 504 (2020).

We must determine, then, whether the state has demonstrated beyond a reasonable doubt that the introduction of the People's letter and the Chase letter contributed to the defendant's conviction. The credit card issuers prepared the letters in response to Martin's reports to those issuers that various charges made on the accounts were fraudulent. The People's letter listed the charges from November 19 to that account that Martin reported as fraudulent and included an affidavit for Martin to sign verifying that he did not make the listed charges. The Chase letter also listed the charges from November 19 that Martin reported as fraudulent and provided that, following investigation, Martin would not be responsible for the fraudulent charges. Both exhibits were admitted, over defense counsel's objections, as past recollections recorded.[21]

In addition to these exhibits, the state admitted the property report that Martin completed and gave to Officer Abbassi. The property report, admitted without objection, lists every purchase the defendant made on November 19 and includes the time of each purchase. Martin testified that he completed the property report after his initial meeting with Officer Abbassi in order to help with the investigation. He testified that he called each card issuer, asked for each charge made since his wallet went missing, and wrote down the information provided. The charges listed on the People's letter and the Chase letter are all listed on the property report.

At trial, Officer Abbassi testified as to the details of his investigation. First, he visited each of the stores listed on the property report to verify the charges. He was able to verify many of the charges listed on the property report. In addition, he reviewed surveillance

video of the defendant making the purchases. Further, Martin testified at length that he initially was charged for the listed transactions, that he never made those transactions, and that he did not give the defendant authorization to engage in those transactions.

On consideration of the property report[22] and the supporting witness' testimony, we determine that the People's letter and the Chase letter were cumulative of the other evidence presented at trial. These letters were admitted to show that the charges occurred and that Martin reported that he was not involved in those transactions. The other exhibits, Martin's testimony, and Officer Abbassi's testimony, however, were all evidence of the same facts. Although the defendant asserts that this makes the letters corroborative rather than cumulative, the record shows otherwise. Therefore, we conclude that any error in admitting the letters was harmless beyond a reasonable doubt, and this claim fails *Golding*'s fourth prong.

B

Finally, we review the defendant's claim that a statement from Martin's Old Navy credit card (Old Navy statement) and a statement from Martin's Home Depot credit card (Home Depot statement) were improperly admitted as past recollections recorded under § 8-3 (6) of the Connecticut Code of Evidence. Specifically, he argues, as he did at trial, that the information contained in these exhibits was never personally known to Martin, the witness through whom the exhibits were presented, and, therefore, could not be admitted into evidence as past recollections recorded. The state argues, inter alia, that, even if these exhibits were admitted in error, the defendant cannot show harm because the information listed in the exhibits, namely, the various charges made to Martin's cards during the period of time in which the defendant had the cards, was also listed in Martin's property report and statement to the police. In response, the defendant argues that these exhibits were "corroborative, rather than merely cumulative" of the information in the property report and Martin's statement to the police. We agree with the state that admission of the exhibits was harmless, and, therefore, we need not determine whether the court erred in admitting them.[23]

"[W]hether [an improper evidentiary ruling that is not constitutional in nature] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the

trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. (Citation omitted; internal quotation marks omitted.) *State* v. *Urbanowski*, 163 Conn. App. 377, 407, 136 A.3d 236 (2016), aff'd, 327 Conn. 169, 172 A.3d 201 (2017).

On review, we cannot conclude that the jury's verdict was substantially swayed by the admission of the Old Navy statement and the Home Depot statement. The Old Navy statement listed two transactions from November 19, and Martin testified that he did not make those charges. The charges listed on the Old Navy statement also were listed on the property report. Similarly, the Home Depot statement listed three charges, one from December 26 and two from December 28, and Martin again testified that he did not make those transactions.

In addition to these exhibits, which are the subject of this claim, the state submitted the property report Martin completed, discussed in detail in part II A 2 of this opinion, and Martin's statement to the police.[24] The statement, which was admitted without objection, detailed the defendant's second round of fraudulent charges in December, 2017. The statement lists three charges on December 28, 2017, to Martin's Home Depot credit card.[25] The charges listed are the same as those listed on the Home Depot statement. Martin testified about the charges made to his Home Depot credit card after he had canceled his stolen cards and about how he learned of the defendant's conduct after receiving a bill for purchases he never made. Martin testified that he then met with Officer Abbassi and provided the statement regarding those additional charges on January 27, 2018. Officer Abbassi testified that he confirmed the Home Depot purchases by obtaining receipts and surveillance footage of the defendant making the purchases from the store.

Given this record, we cannot conclude that the defendant has sustained his burden of showing harm. Martin's statement to the police established the dates and values of the fraudulent transactions on the Home Depot card, and, therefore, the Home Depot statement, admitted only to prove those values, was merely cumulative. Further, the property report established the dates and values of the fraudulent transactions on the Old Navy card. In addition, Martin's and Officer Abbassi's testimony regarding the charges and the investigation established the amounts listed on the property report and

in Martin's statement—the statements were not needed to corroborate the information. In other words, given the other evidence that was before the jury, we have fair assurance that, even if the court improperly admitted these exhibits, any such error did not substantially affect the verdict. Accordingly, the defendant cannot prevail on this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-124 provides in relevant part: "(a) A person is guilty of larceny in the third degree when he commits larceny, as defined in [§] 53a-119, and . . . (2) the value of the property or service exceeds two thousand dollars . . . ."

General Statues § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[2] General Statutes § 53a-129d (a) provides: "A person is guilty of identity theft in the third degree when such person commits identity theft, as defined in [§] 53a-129a."

General Statutes § 53a-129a provides: "(a) A person commits identity theft when such person knowingly uses personal identifying information of another person to obtain or attempt to obtain money, credit, goods, services, property or medical information without the consent of such other person.

"(b) As used in this section, 'personal identifying information' means any name, number or other information that may be used, alone or in conjunction with any other information, to identify a specific individual including, but not limited to, such individual's name, date of birth, mother's maiden name, motor vehicle operator's license number, Social Security number, employee identification number, employer or taxpayer identification number, alien registration number, government passport number, health insurance identification number, demand deposit account number, savings account number, credit card number, debit card number or unique biometric data such as fingerprint, voice print, retina or iris image, or unique physical representation."

[3] A "dispute claim request" from People's United Bank regarding the fraudulent charges asked Martin whether "[his] Debit Card or ATM Card" was or was not in his possession at the time of the disputed transactions. Further, Martin testified that his "debit card" was in his wallet when the wallet went missing. See part II A 2 of this opinion. Thus, in this opinion we refer to the People's United Bank card as a debit card. We refer to the People's United Bank debit card, the American Express credit card, the Old Navy credit card, and the Home Depot credit collectively as cards and to the issuers of those cards as card issuers. When we refer to credit cards and credit card issuers, we are not referencing the People's United Bank debit card.

[4] Of the $2373.94 total, $377.93 applied to Martin's People's United Bank debit card.

[5] Martin testified at trial that he had cancelled all of his credit cards following the first round of fraudulent charges on November 19 and was surprised when his Home Depot credit card bill included additional charges that he had not made. He further testified that "[t]he Home Depot when I called them up because I'm like how could you possibly let more charges go up? Because I cancelled the card and that's when they told me, well, we also just accept driver's licenses to make charges."

[6] The defendant argued in support of his motion for judgment of acquittal that "the state is required to prove that [the defendant] had appropriated property from Mr. Martin Sweet valued at over $2000. Although the state did introduce some evidence of transactions that took place, it looks like those transactions were all related to losses by the Home Depot, losses by other businesses, but no losses over $2000 to Mr. [Martin] Sweet directly." The defendant relied on the fact that Martin's credit card issuers did not ultimately bill him for the fraudulent charges. The state responded that it "[did] not need to prove [that] the ultimate loss rested on Mr. Martin Sweet, simply that when the defendant made those charges, he was taking that property from Martin Sweet, in that, using his credit cards." The court determined that the state had presented evidence that could support both

a theory that the defendant took Martin's credit and a theory that the defendant took the items purchased with the credit cards, to which Martin had a superior property right.

[7] General Statutes § 53a-40 (c) provides in relevant part: "A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. . . ."

[8] The defendant takes issue only with the sufficiency of the evidence with respect to his use of Martin's *credit* cards. He makes no argument that the state produced insufficient evidence to prove that the defendant took something from Martin when he used his debit card. Therefore, our review of this claim relates only to the state's theory of the case with respect to the use of Martin's credit cards and the sufficiency of the evidence to prove that the defendant took Martin's credit.

[9] These exhibits, and others, are the subject of the defendant's second claim. See part II of this opinion.

[10] The property report also included a list of purchases made using Martin's People's United Bank debit card.

[11] The property report is also the subject of the defendant's second claim. See part II of this opinion.

[12] The defendant disputes the state's position that the card issuers' coverage of the losses is irrelevant. The defendant asserts that the state's position was that "it did not need to prove any loss to Martin." The defendant misstates the state's position. The state actually advocated that whether or not Martin *ultimately* lost funds was irrelevant because the state had shown that the defendant took credit from Martin at the time he made the transactions.

[13] The defendant advocates that a plenary standard of review applies to this claim because "[w]hen the question is whether the criminal statute of conviction applies on the facts of the case, the question is one of statutory interpretation . . . ." We disagree that the defendant's claim requires analysis of whether § 53a-124 applies on the facts of this case, and, therefore, we do not afford his claim plenary review.

[14] At trial, the state offered an alternative theory that the items the defendant purchased with Martin's credit cards constituted the property taken from Martin because Martin had superior rights to the property as it was purchased with his credit cards. The court agreed with the state that this was a viable theory. See footnote 5 of this opinion. On appeal, the state offers this as an alternative basis to support the jury's determination of guilt. Because we conclude that there was sufficient evidence with which the jury could have determined that the defendant took Martin's credit, we need not consider this alternative argument.

[15] We note that, "[g]enerally speaking, the state is limited to proving that the defendant has committed the offense in substantially the manner described in the information. . . . Despite this general principle, however, both this court and our Supreme Court have made clear that [t]he inclusion in the state's pleading of additional details concerning the offense does not make such allegations essential elements of the crime, upon which the jury must be instructed. . . . Our case law makes clear that the requirement that the state be limited to proving an offense in substantially the manner described in the information is meant to assure that the defendant is provided with sufficient notice of the crimes against which he must defend. As long as this notice requirement is satisfied, however, the inclusion of additional details in the charge does not place on the state the obligation to prove more than the essential elements of the crime." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Vere C.*, 152 Conn. App. 486, 527, 98 A.3d 884, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014).

[16] Although the defendant makes suggestions, interspersed throughout his appellate briefing, that he does not believe that credit is considered property for the purposes of § 53a-124 (a) (2), he does not raise such a claim on appeal.

[17] We note that the state, in its argument in opposition to the defendant's motion for judgment of acquittal, also argued that the defendant, in making the unauthorized charges, "was taking that property from Martin Sweet, in that, using his credit cards." This argument is consistent with the state's theory of the case with respect to the defendant's use of Martin's credit cards as the defendant having taken property in the form of credit. See footnote 5 of this opinion.

[18] We acknowledge that the state referred to "a taking of money" at various

points during the trial; however, viewing the state's presentation of its case in its totality, the state's theory was that the defendant took credit from Martin.

[19] The defendant argues that we should not construe defense counsel's actions as waiving this claim because "defense counsel already had repeatedly, but unsuccessfully, attempted to exclude the hearsay evidence that was repeated by [Martin] on [the property report]. The failure to object to admission of that document when offered through [Officer] Abbassi should not be construed as an affirmative expression of satisfaction . . . ." The defendant, however, misrepresents the record. Defense counsel did not "fail to object" to the exhibits, he explicitly stated that there was "no objection" to either exhibit. Therefore, this argument is unavailing.

[20] We note that the state argues that the record is not adequate to consider whether the defendant established a constitutional violation. We need not, however, resolve this argument as we are able to dispose of this claim on *Golding*'s fourth prong.

[21] Section 8-3 (6) of the Connecticut Code of Evidence provides that a past recollection recorded, defined as "[a] memorandum or record concerning an event about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness at or about the time of the event recorded and to reflect that knowledge correctly," is "not excluded by the hearsay rule, even though the declarant is available as a witness . . . ."

[22] Although the defendant also claims that this exhibit was admitted in error, we have already concluded in part II A 1 of this opinion that any objection to those exhibits has been waived.

[23] In addition, the defendant argues that the court erred in admitting the People's letter and the Chase letter as past recollections recorded. We already have determined, however, in part II A 2 of this opinion, that the admission of the People's letter and the Chase letter was harmless.

[24] Although the defendant also claims that the court improperly admitted the property report and statement to the police under the past recollection recorded exception, we have already concluded in part II A 1 of this opinion that any objection to those exhibits has been waived.

[25] We note that the Home Depot statement lists the charges as taking place on two different dates, December 26 and 28, but the value of each of the three charges is identical on both documents, with one minor exception (Martin's statement lists one transaction as $902.92, while the Home Depot statement lists it as $902.91). These differences are, however, inconsequential. First, the transactions that took place on November 19, 2017, totaled more than $2000, the value necessary to convict the defendant of larceny in the third degree. Second, the defendant's purchases from Home Depot totaled well in excess of $2000, and, therefore, the one cent difference between the listed amounts is inconsequential.